**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v. Case No. 3:18-cr-157-MMH-PDB

RUSSELL LEROY DOTSON, JR., and
MARIA LUISA DOTSON
_______________________________________/

**ORDER**

Defendants Russell Leroy Dotson, Jr., and Maria Luisa Dotson are each serving an 18-month term of imprisonment for conspiracy to commit wire fraud. (Doc. 108, Judgment as to Mr. Dotson; Doc. 110, Judgment as to Mrs. Dotson). The Dotsons, who owned two food marts in Jacksonville, Florida, admitted to defrauding the Supplemental Nutrition Assistance Program (SNAP) by illegally trading cash for SNAP benefits, resulting in a loss of just under $258,000. (Doc. 117, Plea Transcript as to Mr. Dotson at 31–35; Doc. 119, Plea Transcript as to Mrs. Dotson at 28–32). As part of the sentence, the Court ordered Mr. and Mrs. Dotson each to forfeit $257,919.10, provided that "the United States will not collect more than the collective sum of $257,919.10" from Mr. and Mrs. Dotson. (Doc. 105, Forfeiture Order as to Mr. Dotson; Doc. 106, Forfeiture Order as to Mrs. Dotson); see also Judgment as to Mr. Dotson at 8 (incorporating Forfeiture Order (Doc. 105)); Judgment as to Mrs. Dotson at 8 (incorporating Forfeiture Order (Doc. 106)).

The Dotsons challenge the forfeiture judgments and request that Mrs. Dotson be released from a residential reentry center because of her health. (Doc. 112, "Petition"). The Court construes the challenge to the forfeiture judgments as a petition for writ of error coram nobis and the request for Mrs. Dotson's release as a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A). (See Doc. 113, Order Directing Response to Petition). The United States responded in opposition. (Doc. 125, Response). The Dotsons filed an "objection" to the government's Response, which the Court construes as a reply. (Doc. 128, Reply).[1] For the reasons below, the Petition and request for compassionate release are due to be denied.

## I. The Petition for Writ of Error Coram Nobis

The Dotsons' main contention is that the forfeiture judgments are illegal. Their argument is twofold: (1) that the total amount the Dotsons and their co-conspirators were ordered to forfeit exceeds the amount of money obtained from the conspiracy; and (2) the forfeiture judgments violate Honeycutt v. United States, 137 S. Ct. 1626 (2017), and United States v. Thompson, 990 F.3d 680 (9th Cir. 2021), by holding Mr. and Mrs. Dotson jointly and severally liable for forfeiture.

---

[1] The Dotsons also objected to the United States' request to file a response that exceeded the page limit. (Doc. 126). The Dotsons' objection is due to be overruled. The Court granted the United States' request to file a response exceeding the page limit (Doc. 127) because given the legal issues presented, an extension was warranted.

Although the Dotsons are in custody, the Court construes their challenge to the forfeiture judgments as a petition for writ of error coram nobis rather than a motion to vacate sentence under 28 U.S.C. § 2255. That is because § 2255 cannot be used to challenge non-custodial aspects of a sentence, such as forfeiture or restitution. Mamone v. United States, 559 F.3d 1209, 1210–11 (11th Cir. 2009); Blaik v. United States, 161 F.3d 1341, 1342–43 (11th Cir. 1998). As such, courts in this circuit have entertained challenges to forfeiture under the writ of error coram nobis. See United States v. Bane, 948 F.3d 1290, 1294 (11th Cir. 2020). Thus, the Court assumes that the Dotsons can use the writ of error coram nobis to challenge forfeiture even while in custody.

The All Writs Act, 28 U.S.C. § 1651(a), gives federal courts the authority to issue writs of error coram nobis. United States v. Mills, 221 F.3d 1201, 1203 (11th Cir. 2000). Coram nobis is an extraordinary remedy available only "in compelling circumstances where necessary to achieve justice." Id. A court may provide coram nobis relief if: (1) no other avenue of relief is or was available; and (2) the petitioner presents a fundamental error that made the proceedings irregular and invalid. Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000). If other avenues of relief are or were available, a court may consider coram nobis relief only if a petitioner presents sound reasons for failing to seek relief earlier. Mills, 221 F.3d at 1204. The Eleventh Circuit has said "it is 'difficult to conceive of a situation in a federal criminal case today' where coram

nobis relief 'would be necessary or appropriate.'" United States v. Spellissy, 842 F. App'x 516, 518 (11th Cir. 2021) (quoting Lowery v. United States, 956 F.2d 227, 229 (11th Cir. 1992)).

The Dotsons' Petition fails for two reasons. First, the procedural default rule bars the Dotsons from collaterally attacking the forfeiture judgments. See Bane, 948 F.3d at 1294 (concluding that coram nobis petitioners procedurally defaulted their forfeiture challenge by failing to raise it on direct appeal). "A writ of error coram nobis is a limited remedy of last resort, and this remedy is unavailable [where] the defendant could have raised [the] issues on direct criminal appeal and failed to do so." United States v. Mosavi, 138 F.3d 1365, 1366 n.1 (11th Cir. 1998) (citation omitted). The Dotsons' arguments against forfeiture – (1) that the collective amount the Dotsons and their co-conspirators were ordered to forfeit exceeds the proceeds of the fraud, and (2) that the forfeiture judgments violate Honeycutt – were ripe even before the judgments were entered and could have been raised on direct appeal.[2] Neither argument depends on a change in law or a fact that arose only after time expired for the Dotsons to appeal their sentences. Still, neither of the Dotsons appealed his or

[2] The Supreme Court's Honeycutt decision, which was decided in 2017, was available to the Dotsons at all times relevant to these proceedings. Likewise, the Ninth Circuit's decision in Thompson, 990 F.3d 680, which was issued on March 3, 2021, was available as well before the entry of the judgments (Thompson also is not binding in this circuit because it is an out-of-circuit precedent). Even so, the Dotsons failed to object to their liability for restitution or forfeiture during the sentencing proceedings. (Doc. 122, Sentencing Transcript at 6, 44–45).

her conviction and sentence following the entry of judgment. Nor have the Dotsons presented sound reasons for failing to seek relief from the forfeiture judgments earlier. Mills, 221 F.3d at 1204. A petitioner can avoid a procedural default by establishing cause and prejudice, McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011), or by showing that an error was jurisdictional, United States v. Peter, 310 F.3d 709, 711–13 (11th Cir. 2002), but the Dotsons meet neither exception. The Dotsons do not explain why they failed to challenge the forfeiture judgments on direct appeal. See generally Petition; Reply. And the errors that the Dotsons allege do not implicate the Court's subject matter jurisdiction. Bane, 948 F.3d at 1295–96. As a result, the doctrine of procedural default bars the Dotsons from using the writ of error coram nobis to challenge the forfeiture judgments.

Second, the Dotsons' arguments fail on the merits. The Dotsons contend that, between themselves and their co-conspirators (of which there were twelve)[3], "the court's forfeiture money judgments exceeded the total aggregate of the illegal proceeds from the joint illegal activity" because the Court "ordered joint and several liability judgments … in an amount of approximately $765,787.67." Petition at 1–2. In contrast, the amount obtained from the

[3] The other conspirators, who were employees of the Dotsons' food stores, are listed in the judgments. See Judgment as to Mr. Dotson at 7–8; Judgment as to Mrs. Dotson at 8.

conspiracy was $257,979.10. See Plea Tr. as to Mr. Dotson at 34; Plea Tr. as to Mrs. Dotson at 31.

The Dotsons' argument is misguided. In reaching the $765,787.67 figure, they conflate their forfeiture and restitution obligations with the restitution obligations of their co-conspirators. The Court ordered forfeiture against only the Dotsons, provided that "the United States will not collect more than the collective sum of $257,919.10" from Mr. and Mrs. Dotson. Forfeiture Order as to Mr. Dotson (Doc. 105); Forfeiture Order as to Mrs. Dotson (Doc. 106). The Court did not order forfeiture against any of the co-conspirators. The Court did order the Dotsons and their co-conspirators to pay restitution in addition to the Dotsons' forfeiture obligation. Specifically, the Court ordered the Dotsons to pay $257,979.10 in restitution to the United States Department of Agriculture, with the Dotsons jointly and severally liable for the whole amount and their co-conspirators jointly and severally liable with the Dotsons for lesser amounts. Sentencing Transcript at 44; see also Judgment as to Mr. Dotson at 7–8; Judgment as to Mrs. Dotson at 8. Thus, between the Dotsons' forfeiture obligation and the conspirators' collective restitution obligation, the total is $515,898.20 ($257,919.10 in forfeiture as to the Dotsons, plus $257,979.10 in collective restitution between the Dotsons and their co-conspirators).

That the forfeiture obligation seems duplicative of the restitution obligation does not make the forfeiture unlawful. "It is well established that the

government may 'double dip' by obtaining the same amount in forfeiture and restitution." Bane, 948 F.3d at 1298 (citing United States v. Hoffman-Vaile, 568 F.3d 1335, 1344 (11th Cir. 2009)). As the United States observes, restitution and forfeiture are separate (and here mandatory) "elements of a defendant's sentence that serve different purposes." Response at 29–30. "While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice (DOJ)." United States v. Joseph, 743 F.3d 1350, 1354 (11th Cir. 2014) (internal citations omitted). Title 28, United States Code, § 2461 mandates forfeiture by providing that "[i]f the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case." 28 U.S.C. § 2461(c) (emphasis added). And restitution is also mandatory under the Mandatory Victims Restitution Act of 1996 (MVRA), which "obligates district courts to order restitution in certain cases," including wire fraud. United States v. Dickerson, 370 F.3d 1330, 1335–36 & n.12 (11th Cir. 2004); see also 18 U.S.C. §§ 3663A(a)(1), (c)(1).

> For designated offenses, including those involving fraud or where an identifiable victim has sustained a pecuniary loss, the MVRA requires a district court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."

Joseph, 743 F.3d at 1353–54 (emphasis in original) (quoting 18 U.S.C. § 3664(f)(1)(A)). "The court must order full restitution 'in addition to … any other penalty authorized by law.'" Id. at 1354 (emphasis added) (quoting 18 U.S.C. § 3663A(a)(1)). Because the Dotsons were convicted of conspiracy to commit wire fraud against an identifiable victim (SNAP), restitution of the full loss amount was mandatory in addition to forfeiture. Thus, the Dotsons' challenge to the aggregate amount of forfeiture and restitution lacks merit.

The Dotsons also argue that the forfeiture judgments violate the Supreme Court's decision in Honeycutt, 137 S. Ct. 1626, by holding Mr. and Mrs. Dotson jointly and severally liable. They are again mistaken. In Honeycutt, the Supreme Court held that under 21 U.S.C. § 853 (a statute mandating forfeiture from persons convicted of certain serious drug crimes), a defendant may not be held jointly and severally liable for property that a co-conspirator derived from the crime but that the defendant himself did not acquire. Id. at 1630, 1631–32. Honeycutt involved two brothers – Terry and Tony Honeycutt – who were convicted of federal crimes relating to the sale of an iodine product ("Polar Pure") while knowing or having reason to believe it would be used to manufacture methamphetamine. Id. at 1630–31. But only Tony Honeycutt had an ownership interest in the hardware store from which the brothers sold the product (which grossed $400,000 for the store). Id. at 1630. Terry Honeycutt merely worked for the store, had no controlling interest in it, and did not benefit

personally from the product sales. Id. at 1630–31. Even so, the Sixth Circuit held that the brothers could be held jointly and severally liable for any proceeds from the conspiracy and "that each brother bore full responsibility for the entire forfeiture judgment." Id. at 1631. The Supreme Court reversed, concluding that "[f]orfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime." Id. at 1635. Thus, § 853 required no forfeiture from Terry Honeycutt because he "had no ownership interest in his brother's store," "did not personally benefit from the Polar Pure sales," and "never obtained tainted property as a result of the crime." Id.

The Dotsons' case differs from Honeycutt. Mr. and Mrs. Dotson each admitted they were co-owners of Asmarina Food Marts, the food stores involved in the SNAP fraud. See Plea Tr. as to Mr. Dotson at 31–35; Plea Tr. as to Mrs. Dotson at 28–32; see also Presentence Investigation Report (PSR) as to Mr. Dotson (Doc. 102) ¶ 8 & n.1; PSR as to Mrs. Dotson (Doc. 103) ¶ 8 & n.1. As co-owners of the food marts, Mr. and Mrs. Dotson both benefited personally from the fraud. Indeed, Mr. and Mrs. Dotson admitted that they – not their employees – kept the profits from the fraudulent transactions. Plea Tr. as to Mr. Dotson at 33; Plea Tr. as to Mrs. Dotson at 30. So Honeycutt is inapposite.[4]

[4] The Ninth Circuit's decision in Thompson, 990 F.3d 680, is equally unavailing. Indeed, in Thompson, the court suggested that married defendants could be held jointly and severally liable because tenants by the entirety "have an unfettered right to enjoy the whole" spoils. Id. at 691.

To the extent the Dotsons contest their joint and several liability for restitution, Honeycutt says nothing about that. Even after Honeycutt, district courts may impose joint and several liability for restitution obligations. See United States v. Grady, 18 F.4th 1275, 1288–89 (11th Cir. 2021) (district court did not abuse its discretion in holding three conspirators jointly and severally liable for the full amount of restitution for losses resulting from acts that were part of the conspiracy, which included vandalizing a Navy submarine base).

In short, the Dotsons' forfeiture claims are procedurally defaulted and lack merit. The Petition for writ of error coram nobis is due to be denied.

## II. Request for Compassionate Release

The Dotsons also request that the Court order Mrs. Dotson's release from a reentry center because of her medical conditions. Petition at 2. Alternatively, the Dotsons request that the Court order Mrs. Dotson to be transferred to home confinement under the CARES Act. See id.[5] They assert that Mrs. Dotson suffers from "serious disabilities," including diabetes, partial blindness in the right eye, and cysts near the lymph nodes in her neck that may be cancerous. Petition at 2. According to the Bureau of Prisons (BOP), Mrs. Dotson is 67 years old and in the custody of Orlando Residential Reentry Management Center

---

[5] Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116–136, 134 Stat. 281 (2020).

(RRM), with a release date of November 15, 2022. The Petition states that Mrs. Dotson is living under "prison camp conditions" at 601 Agmac Avenue in Jacksonville, Florida, which is the address for Bridges International, a community release center. The United States argues that Mrs. Dotson has not exhausted administrative remedies and has not established "extraordinary and compelling reasons" for a sentence reduction. Response at 4–13.[6]

A district court "may not modify a term of imprisonment once it has been imposed," except under certain circumstances defined by statute. 18 U.S.C. § 3582(c). One of those exceptions is § 3582(c)(1)(A), which provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... if it finds that extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). The Eleventh Circuit instructs that U.S.S.G. § 1B1.13 is the applicable policy statement for all § 3582(c)(1)(A) motions, and that "a district court cannot grant a motion for reduction if it would be inconsistent with the [Sentencing] Commission's policy statement defining

6 The United States also argues that Mr. Dotson cannot move for compassionate release on Mrs. Dotson's behalf. The Court need not resolve that argument. The Court also assumes, for the sake of discussion, that Mrs. Dotson satisfied § 3582(c)(1)(A)'s exhaustion requirement.

'extraordinary and compelling reasons.'" United States v. Bryant, 996 F.3d 1243, 1247, 1249 (11th Cir.), cert denied 142 S. Ct. 583 (2021); see also U.S.S.G. § 1B1.13, cmt. 1 (defining "extraordinary and compelling reasons").[7]

"[B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are 'extraordinary and compelling reasons' for doing so, and ... (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement." United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021). "Because all three conditions – i.e., support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement – are necessary, the absence of even one would foreclose a sentence reduction." Id. at 1238.

A movant under § 3582(c)(1)(A) must prove that a sentence reduction is warranted. United States v. Kannell, 834 F. App'x 566, 567 (11th Cir. 2021) (citing United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014)). "Because the statute speaks permissively and says that the district court 'may' reduce a

---

[7] Application Notes 1(A) through 1(C) provide that a terminal illness or a serious medical condition, old age, and certain family circumstances qualify as extraordinary and compelling reasons. Application Note 1(D) provides that extraordinary and compelling reasons exist if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." "Application Note 1(D) does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." Bryant, 996 F.3d at 1248.

defendant's sentence after certain findings and considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021). And as the Third Circuit has observed, COVID-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Court has reviewed and considered the parties' arguments and the case files, including Mrs. Dotson's medical records (Doc. 125-3) and her PSR (Doc. 103). The Court does not find that Mrs. Dotson has established "extraordinary and compelling reasons" for a sentence reduction under U.S.S.G. § 1B1.13, cmt. 1. While the Court acknowledges that she has several medical conditions, including type 2 diabetes and chronic obstructive pulmonary disease, there is no evidence she suffers from cancer or a terminal illness.[8] Nor is there evidence that her conditions substantially diminish her ability to provide self-care within a correctional environment. See U.S.S.G. § 1B1.13, cmt. 1(A)(ii). According to a letter from a staff member at Bridges International,

---

[8] The medical records do reflect that Mrs. Dotson has "bilateral parotid tumors" and is "diagnosed with Warthins [tumor] vs Oncocytoma." Med. Records at 40; see also id. at 199–201. According to the Mayo Clinic, most tumors of the parotid gland (a type of salivary gland) are benign, including Warthin's tumors. Salivary gland tumors, The Mayo Clinic (May 24, 2022), available at https://www.mayoclinic.org/diseases-conditions/salivary-gland-cancer/symptoms-causes/syc-20354151. According to the report of Mrs. Dotson's ear, nose, and throat specialist, the tumors have been followed for three years and have "not changed in size significantly." Med. Records at 199. The physician did not say that the tumors are malignant. See id. at 201.

> [S]ince arriving [at] BFRC-Jacksonville, Ms. Dotson has been in good condition and has not experience[d] any major issues to note. She has not been working even though she wants to get a job. I feel that it is best that she doesn't do too much due to her age and health. She has been able to attend any scheduled appointments that she has had and will have in the future. She did complain about lower back pains and her Case Manager is in the process of helping her get to an Orthopedic physician in the required network. She has been going home on approved weekend passes and been spending her weekends with family and friends. While she is housed at the facility, she does exercise by walking daily using her walker for assistance. She understands that if emergencies come about and she is [in] need of immediate assistance, staff will assist her with the appropriate agencies.

(Doc. 125-2, Letter). Mrs. Dotson has also received (at least) two doses of the Pfizer COVID-19 vaccine, PSR as to Mrs. Dotson ¶ 53, and she recovered from a COVID-19 infection that occurred in January 2022, Medical Records at 1–15, 136. Given that Mrs. Dotson is no longer in a prison facility and her conditions appear to be well monitored, the Court finds that a reduction in sentence is not warranted under § 3582(c)(1)(A).[9]

To the extent Mrs. Dotson requests that the Court order a direct transfer to home confinement, the Court cannot grant that request. The Attorney General has exclusive jurisdiction to decide which prisoners to place in the home confinement program. See United States v. Groover, 844 F. App'x 185, 188 (11th Cir. 2021); Touizer v. U.S. Att'y Gen., No. 21-10761, 2021 WL 3829618, at *2–3 (11th Cir. Aug. 27, 2021).

[9] Mrs. Dotson also has not demonstrated the existence of extraordinary and compelling circumstances as defined under U.S.S.G. § 1B1.13, cmt. 1(B)–(D).

### III. Conclusion

Having considered each of the parties' arguments and exhibits, it is **ORDERED:**

1. Mr. and Mrs. Dotson's construed petition for writ of error coram nobis (Doc. 112) is **DENIED**.
2. Mrs. Dotson's construed request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 112) is **DENIED**.
3. Mr. and Mrs. Dotson's Objection to the United States' request to file a response that exceeds the page limit (Doc. 126) is **OVERRULED**.
4. Mr. and Mrs. Dotson's Objection to the United States' Response based on the United States referring to Mrs. Dotson by her first name (Doc. 128) is **OVERRULED**. When multiple defendants share the same last name, identifying individual defendants by their first names is a common and accepted practice.
5. The United States' Motion to Strike (Doc. 130) is **DENIED AS MOOT**.

**DONE AND ORDERED** at Jacksonville, Florida this 18th day of October, 2022.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

lc 19
Copies:
Pro se defendants
Counsel of record